IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| LATASSIE V. HURT, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-cv-28 (MTT) (CHW) |
| | : | |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Latassie V. Hurt's application for benefits. Because the ALJ failed to articulate "good cause" for discounting the opinions of two treating physicians, it is **RECOMMENDED** that Plaintiff's case be **REMANDED** pursuant to "sentence four" of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for Title II and Title XVI benefits in July 2009. (R. 150–60). She claimed, in her applications, that her disability began in March 2009 when she suffered from a cerebrovascular accident while performing assembly line work for Rheem Manufacturing. (R. 65–66). Plaintiff claims to suffer from residual numbness and pain, as well as from depression and intellectual limitations. (Doc. 10, p. 4). Plaintiff's applications were denied initially and on reconsideration, (R. 93–94), and a reviewing Administrative Law Judge ("ALJ") held a hearing on April 17, 2012. At that hearing, Plaintiff's counsel objected to the introduction of a Cooperative Disability Investigations ("CDI") report (Ex. 7F) on grounds of relevancy and also on the grounds that the report relied on the testimony of anonymous witnesses. (R. 56–58).

Plaintiff's counsel also argued that Dr. Ndiya Nkongho, a DDS psychological reviewer, improperly relied upon the CDI report in finding that Plaintiff suffered from few psychological limitations. (R. 57–58). Although the ALJ acknowledged Plaintiff's arguments, the ALJ failed to address those arguments both at the hearing and in her unfavorable April 27 opinion. The Appeals Council denied review in Plaintiff's case on November 19, 2013, and Plaintiff now seeks review before this Court arguing: (1) that the ALJ erred by failing to articulate grounds for discounting the opinions of two treating physicians, Dr. Thomas Terry and Dr. Saqib Nazir; and also (2) that the ALJ erred in relying on the CDI report to discount both Dr. William McDaniel's consultative examination report and also Plaintiff's own credibility. Because Plaintiff's first argument—regarding the opinions of her treating physicians—warrants a remand, it is not recommended that the Court determine what weight the CDI report should have carried. Rather, on remand, the Commissioner should expressly address, on the record, Plaintiff's objections to the CDI report in accordance with HALLEX I-2-6-58 (C).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

**EVALUATION OF DISAIBLITY**

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

**DISABILITY EVALUATION IN THIS CASE**

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least March 25, 2009, her alleged onset date. (R. 25). At step two, the ALJ found that Plaintiff had the following severe impairments: "status post cerebral vascular accident, status post myocardial infarction, [and] status post aortic thrombus." (R. 25). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or equaling one of the listed impairments. (R. 26). Therefore, the ALJ

assessed Plaintiff's RFC and determined that Plaintiff could perform "the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (R. 26). Based on this RFC finding the ALJ determined, at step four, that Plaintiff could return to her past relevant work as an assembly line worker, cashier, and fast food worker. (R. 32). As a result of her step-four finding, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff argues that the ALJ erred in failing to articulate "good cause" for discounting the opinions of two treating physicians: Dr. Thomas Terry and Dr. Saqib Nazir. Because the record supports Plaintiff's argument, it is recommended that Plaintiff's case be remanded to the Commissioner for a reevaluation of the evidence.

Well established Eleventh Circuit caselaw requires that "unless good cause is shown to the contrary, the ALJ must assign 'substantial weight' or 'considerable weight' to the opinion, diagnosis, and medical evidence of the claimant's treating physician." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). Such "good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004).

In this case, the ALJ's formal assessment[1] of the records of Dr. Terry and Dr. Nazir reads, in full, as follows:

> As for the opinion evidence, the expression of disability made by Dr. Terry (exhibit 15F) and by Dr. Nazir (exhibit 21F) is a conclusory statement and not based on clinical or objective evidence but largely on the claimant's own complaints and account of her symptoms and limitations. The doctors offered no laboratory or clinical findings to support their conclusory statements. At any rate,

---

[1] The ALJ also summarized Dr. Terry's and Dr. Nazir's findings, (R. 28–29), but the ALJ's summary provides no insight into her decision to discount these doctors' opinions.

4

>  medical source opinions that the claimant is "disabled" are not determinative of disability. While the opinions from treating and examining sources are considered, the final responsibility for determining the issue of disability is reserved for the Social Security Administration . . . .

(R. 31)

This assessment by the ALJ is not sufficient to allow for meaningful judicial review. With regard to Dr. Terry's opinion, for example, although Dr. Terry's "medical source statement" (Ex. 15F) is rather cursory—it states only that Plaintiff was disabled due to "[status post] reaction of a growth in her aorta and occlusion of her right carotid artery," and also that Plaintiff had "constant pain from nonunion of her sternum as well as pain in her low back," (R. 503)—the record also contains many pages of treatment notes from Dr. Terry which span the period between March 2009 and January 2012. These treatment notes show that Dr. Terry performed a "left heart catheterization," "left ventriculogram," and "coronary arteriogram" on March 25, 2009, (R. 341–42), that he examined Plaintiff in June and possibly July of 2009, (R. 305, 308, 333–34), that he was kept apprised of the results of Plaintiff's July 30, 2009 surgery, which consisted of a "sternotomy," "removal of aortic root mass," and "Placement of a temporary epicardial pacing wires," (R. 298–301), and finally, that he treated Plaintiff in August 2009, (R. 281), June and July of 2010, (R. 470–78, 494), February, August and November of 2011, (R. 508–10, 512–14, 525–27), and January of 2012, (R. 504–06). In other words, Dr. Terry's treatment notes suggest that Dr. Terry had an adequate basis in the objective, medical evidence to propose that Plaintiff was disabled due to her heart condition and post-surgical pain. Because the ALJ's opinion suggests that the ALJ either ignored Dr. Terry's treatment notes or that she weighed Dr. Terry's medical source statement without considering whether Dr. Terry's treatment notes adequately support his medical source statement, Plaintiff's case should be remanded to allow the Commissioner to determine whether "good cause" in fact exists to discount Dr. Terry's opinion.

Plaintiff's case should also be remanded for a reevaluation of the records from Dr. Saqib Nazir. Dr. Nazir found, in a March 14, 2012 questionnaire, that Plaintiff:

- had a "poor" prognosis;
- was not currently able to work;
- could walk for only 1 or 2 blocks without rest or severe pain
- could sit for only 1 to 2 hours continuously, and for about 4 hours in total during an 8-hour workday;
- could stand for only 20 minutes continuously, and for about 2 hours in total during an 8-hour workday;
- Needed to shift positions at will from sitting, standing or walking, and needed to lie down for about 30-45 minutes once or twice during a work shift at unpredictable intervals;
- Could only occasionally lift 10 pounds or less, and could never lift 20 pounds or more; and
- had significant limitations in reaching, handling or fingering.

(R. 958–63). These findings were, according to Dr. Nazir, based on a treatment history lasting "many years," (R. 958), and indeed the record contains treatment notes and referral reports referencing Dr. Nazir which date from May 2009 to March 2012. (Ex. 18F). The Commissioner now appears to ask the Court to weigh, for the first time, Dr. Nazir's report, (Doc. 12, p. 7), but of course the Court cannot weigh evidence, and additionally, the Commissioner cannot support her opinion by relying on post-hoc rationalizations. *Baker v. Comm'r*, 384 F.App'x 893, 896 (11th Cir. 2010). Rather, because the ALJ's stated bases for discounting both Dr. Nazir's and Dr. Terry's opinions are too vague to permit meaningful judicial review, and because the ALJ's opinion additionally does not evidence that the ALJ adequately considered both doctors' treatment notes before discounting their opinions, it is recommended that the Court remand.

**(2) The CDI Report**

Plaintiff also raises two other arguments, both of them related to a CDI report to which Plaintiff's attorney objected, at Plaintiff's hearing, on due-process and relevance grounds. (R. 57–58). Plaintiff argues that: (1) "The ALJ Improperly Rejected the Findings and Conclusions of Dr. McDaniel, the Consultative Psychological Examiner;" and (2) "The ALJ Relied Upon Improper Evidence in Discounting Ms. Hurt's Credibility." (Doc. 10, pp. 14, 16). The record suggests that the ALJ relied upon records from Dr. Nidya Nkongho in discounting Dr. McDaniel's opinion. (Doc. 29–31). Dr. Nkongho, in turn, relied upon the CDI report in finding that Plaintiff's mental functioning was higher than that proposed by Dr. McDaniel. (R. 464).

Both of these arguments are based to some extent on a provision of the Hearings, Appeals, and Litigation Law Manual. ("HALLEX"). That provision, HALLEX I-2-6-58(C), indicates that the ALJ should have addressed Plaintiff's objections to the CDI report before she issued her unfavorable opinion. Given the uncertain weight afforded to HALLEX provisions[2], however, it is not recommended that the Court now determine what weight, if any, the ALJ should have given to the CDI report and to the other records which relied upon that CDI report. Rather, it is recommended that the Court remand with instructions that the Commissioner rule, on the record, upon Plaintiff's objections to the CDI report. In particular, the Commissioner should explain why testimony from anonymous sources concerning Plaintiff's alleged behavior in 2008 provides sufficient grounds for discounting both medical evidence and Plaintiff's own subjective statements in regards to her functioning following a cerebrovascular accident in March 2009.

---

[2] It is unclear whether HALLEX carries the force of law. S*ee George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009).

## **CONCLUSION**

In accordance with the analysis above, it is **RECOMMENDED** that Plaintiff's case be **REMANDED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 15th day of January, 2015.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge
